# Exhibit B

 

March 29, 2017

The Honorable Tani G. Cantil-Sakauye
Chief Justice
Supreme Court of California
350 McAllister Street
San Francisco, California 94102

Dear Chief Justice Cantil-Sakauye:

    Thank you for your March 16, 2017 letter regarding concern about reports from some California trial courts that suggest law enforcement officers, engaged in the performance of their duties with U.S. Immigration and Customs Enforcement (ICE), are "stalking" individuals at courthouses to make arrests.

    As the chief judicial officer of the State of California, your characterization of federal law enforcement officers is particularly troubling. As you are aware, stalking has a specific legal meaning in American law, which describes criminal activity involving repetitive following or harassment of the victim with the intent to produce fear of harm. The arrest of persons in a public place based upon probable cause has long been held by the United States Supreme Court as constitutionally permissible. *See U.S. v. Watson*, 432 U.S. 411 (1976). Further, ICE officers and agents are authorized by federal statute to make arrests of aliens where probable cause exists to believe that such aliens are in violation of immigration laws. *See* 8 U.S.C. § 1357.

    To be clear, the arrest of individuals by ICE officers and agents is predicated on investigation and targeting of specific persons who have been identified by ICE and other law enforcement agencies as subject to arrest for violations of federal law. ICE does not engage in "sweeps" or other indiscriminate arrest practices.

Some jurisdictions, including the State of California and many of its largest counties and cities, have enacted statutes and ordinances designed to specifically prohibit or hinder ICE from enforcing immigration law by prohibiting communication with ICE, and denying requests by ICE officers and agents to enter prisons and jails to make arrests. Such policies threaten public safety, rather than enhance it. As a result, ICE officers and agents are required to locate and arrest these aliens in public places, rather than in secure jail facilities where the risk of injury to the public, the alien, and the officer is significantly increased because the alien can more readily access a weapon, resist arrest, or flee. Because courthouse visitors are typically screened upon entry to search for weapons and other contraband, the safety risks for the arresting officers and persons being arrested are substantially decreased.

We agree with you that the enforcement of our country's immigration laws is necessary, and that we should strive to ensure public safety and the efficient administration of justice. Therefore, we would encourage you to express your concerns to the Governor of California and local officials who have enacted policies that occasionally necessitate ICE officers and agents to make arrests at courthouses and other public places.

The men and women of federal law enforcement perform their duties with the highest degree of professionalism and public service. As ICE undertakes the necessary enforcement of our country's immigration laws, its officers and agents will continually improve their operations to meet the challenges to effective enforcement, including state and local policies that hinder their efforts. While these law enforcement personnel will remain mindful of concerns by the public and governmental stakeholders regarding enforcement activities, they will continue to take prudent and reasonable actions within their lawful authority to achieve their mission.

Sincerely,

Jefferson B. Sessions III
Attorney General

John F. Kelly
Secretary of Homeland Security