# Exhibit 1

# COMMENTARIES

ON THE

# LAWS

OF

# ENGLAND.

BOOK THE THIRD.

BY

WILLIAM BLACKSTONE, Esq.

SOLICITOR GENERAL TO HER MAJESTY.

OXFORD,
PRINTED AT THE CLARENDON PRESS.
M. DCC. LXVIII.

CHAPTER THE NINETEENTH.

OF PROCESS.

THE next ſtep for carrying on the ſuit, after ſuing out the original, is called the *proceſs*; being the means of compelling the defendant to appear in court. This is ſometimes called *original* proceſs, being founded upon the original writ; and alſo to diſtinguiſh it from *meſne* or intermediate proceſs, which iſſues, pending the ſuit, upon ſome collateral interlocutory matter; as to ſummon juries, witneſſes, and the like [a]. *Meſne* proceſs is alſo ſometimes put in contradiſtinction to *final* proceſs, or proceſs *of execution*; and then it ſignifies all ſuch proceſs as intervenes between the beginning and end of a ſuit.

BUT proceſs, as we are now to conſider it, is the method taken by the law to compel a compliance with the original writ, of which the primary ſtep is by giving the party notice to obey it. This notice is given upon all real *praecipes*, and alſo upon all perſonal writs for injuries not againſt the peace, by *ſummons*; which is a warning to appear in court at the return of the original writ, given to the defendant by two of the ſheriff's meſſengers called *ſummoners*, either in perſon or left at his houſe or land [b]: in like manner as in the civil law the firſt proceſs is by perſonal citation, *in jus vocando* [c]. This warning on the land is

---

[a] Finch. L. 436.  
[b] Ibid. 344. 352.  
[c] Ff. 2. 4. 1.

given,

given, in real actions, by erecting a white stick or wand on the defendant's grounds[d]; (which stick or wand among the northern nations is called the *baculus nunciatorius*[e]) and by statute 31 Eliz. c. 3. it must also be proclaimed on some sunday before the door of the parish church.

IF the defendant disobeys this verbal monition, the next process is by writ of *attachment*, or *pone*, so called from the words of the writ[f], "*pone per vadium et salvos plegios*, put by gage and "safe pledges A. B. the defendant, &c." This is a writ, not issuing out of chancery, but out of the court of common pleas, being grounded on the non-appearance of the defendant at the return of the original writ; and thereby the sheriff is commanded to attach him, by taking *gage*, that is, certain of his goods; which he shall forfeit if he doth not appear[g]; or by making him find *safe pledges* or sureties, who shall be amerced in case of his non-appearance[h]. This is also the first and immediate process, without any previous summons, upon actions of trespass *vi et armis*, or for other injuries, which though not forcible are yet trespasses against the peace, as *deceit* and *conspiracy*[i]; where the violence of the wrong requires a more speedy remedy, and therefore the original writ commands the defendant to be at once attached, without any precedent warning[k].

IF, after *attachment*, the defendant neglects to appear, he not only forfeits this security, but is moreover to be farther compelled by writ of *distringas*[l], or *distress, infinite*; which is a subsequent process issuing from the court of common pleas, commanding the sheriff to distrein the defendant from time to time, and continually afterwards, by taking his goods and the profits of his lands, which he forfeits to the king if he doth not appear[m].

---

[d] Dalt. of sher. c. 31.
[e] Stiernh. *de jure Sueon. l.* 1, *c.* 6.
[f] Append. N°. III. §. 2.
[g] Finch. L. 345.
[h] Dalt. sher. c. 32.
[i] Finch. L. 305. 352.
[k] Append. N°. II. §. 1.
[l] Append. N°. III. §. 2.
[m] Finch. L. 352.

In

In like manner as by the civil law, if the defendant abſconds, ſo that the citation is of no effect, *" mittitur adverſarius in poſſeſſio-* *" nem bonorum ejus* [n]*."*

AND here by the common, as well as the civil, law the proceſs ended in caſe of injuries without force; the defendant, if he had any ſubſtance, being gradually ſtripped of it all by repeated diſtreſſes, till he rendered obedience to the king's writ; and, if he had no ſubſtance, the law held him incapable of making ſatisfaction, and therefore looked upon all farther proceſs as nugatory. And beſides, upon feodal principles, the perſon of a feudatory was not liable to be attached for injuries merely civil, leſt thereby his lord ſhould be deprived of his perſonal ſervices. But, in caſes of injury accompanied with force, the law, to puniſh the breach of the peace and prevent it's diſturbance for the future, provided alſo a proceſs againſt the defendant's *perſon*, in caſe he neglected to appear upon the former proceſs of attachment, or had no ſubſtance whereby to be attached; ſubjecting his body to impriſonment by the writ of *capias ad reſpondendum* [o]. But this immunity of the defendant's perſon, in caſe of peaceable though fraudulent injuries, producing great contempt of the law in indigent wrongdoers, a *capias* was alſo allowed, to arreſt the perſon, in actions of *account*, though no breach of the peace be ſuggeſted, by the ſtatutes of Marlbridge, 52 Hen. III. c. 23. and Weſtm. 2. 13 Edw. I. c. 11. in actions of *debt* and *detinue*, by ſtatute 25 Edw. III. c. 17. and in all actions *on the caſe*, by ſtatute 19 Hen. VII. c. 9. Before which laſt ſtatute a practice had been introduced of commencing the ſuit by bringing an original writ of treſpaſs *quare clauſum fregit*, for breaking the plaintiff's cloſe, *vi et armis*; which by the old common law ſubjected the defendant's perſon to be arreſted by writ of *capias:* and then afterwards, by connivance of the court, the plaintiff might proceed to proſecute for any other leſs forcible injury. This practice (through cuſtom rather than neceſſity, and for ſaving ſome trouble and expenſe, in ſuing out a ſpecial original adapted to the

[n] *Ff.* 2. 4. 19.  [o] 3 Rep. 12.

particular injury) still continues in almost all cases, except in actions of debt; though now, by virtue of the statutes above cited and others, a *capias* might be had upon almost every species of complaint.

IF therefore the defendant being summoned or attached makes default, and neglects to appear; or if the sheriff returns a *nihil*, or that the defendant hath nothing whereby he may be summoned, attached, or distreined; the *capias* now usually issues [p], being a writ commanding the sheriff to *take* the body of the defendant if he may be found in his bailiwick or county, and him safely to keep, so that he may have him in court on the day of the return, to answer to the plaintiff of a plea of debt, or trespass, &c, as the case may be. This writ, and all others subsequent to the original writ, not issuing out of chancery but from the court into which the original was returnable, and being grounded on what has passed in that court in consequence of the sheriff's return, are called *judicial*, not *original*, writs; they issue under the private seal of that court, and not under the great seal of England; and are *teste*'d, not in the king's name, but in that of the chief justice only. And these several writs, being grounded on the sheriff's return, must respectively bear date the same day on which the writ immediately preceding was returnable.

THIS is the regular and orderly method of process. But it is now usual in practice, to sue out the *capias* in the first instance, upon a supposed return of the sheriff; especially if it be suspected that the defendant, upon notice of the action, will abscond: and afterwards a fictitious original is drawn up, with a proper return thereupon, in order to give the proceedings a colour of regularity. When this *capias* is delivered to the sheriff, he by his under-sheriff grants a warrant to his inferior officers, or bailiffs, to execute it on the defendant. And, if the sheriff of Oxfordshire (in which county the injury is supposed to be committed and the action is laid) cannot find the defendant in his jurisdiction, he

---

[p] Append. N°. III. §. 2.

returns

returns that he is not found, *non est inventus*, in his bailiwick: whereupon another writ issues, called a *testatum capias* [q], directed to the sheriff of the county where the defendant is supposed to reside, as of Berkshire, reciting the former writ, and that it is *testified, testatum est*, that the defendant lurks or wanders in *his* bailiwick, wherefore he is commanded to take him, as in the former *capias*. But here also, when the action is brought in one county and the defendant lives in another, it is usual, for saving trouble, time, and expense, to make out a *testatum capias* at the first; supposing not only an original, but also a former *capias*, to have been granted, which in fact never was. And this fiction, being beneficial to all parties, is readily acquiesced in and is now become the settled practice; being one among many instances to illustrate that maxim of law, that *in fictione juris consistit aequitas*.

BUT where a defendant absconds, and the plaintiff would proceed to an outlawry against him, an original writ must then be sued out regularly, and after that a *capias*. And if the sheriff cannot find the defendant upon the first writ of *capias*, and returns a *non est inventus*, there issues out an *alias* writ, and after that a *pluries*, to the same effect as the former [r]: only after these words " we command you," this clause is inserted, " as " we have *formerly*," or, " as we have *often* commanded you; " *sicut* alias," or, "*sicut* pluries *praecepimus*." And, if a *non est inventus* is returned upon all of them, then a writ of *exigent* or *exigi facias* may be sued out [s], which requires the sheriff to cause the defendant to be proclaimed, required, or exacted, in five county courts successively, to render himself; and, if he does, then to take him, as in a *capias*: but if he does not appear, and is returned *quinto exactus*, he shall then be outlawed by the coroners of the county. Also by statutes 6 Hen. VIII. c. 4. and 31 Eliz. c. 3. whether the defendant dwells within the same or another county than that wherein the *exigent* is sued out, a *writ*

[q] Append. N°. III. §. 2.     [s] *Ibid.*
[r] *Ibid.*

*of proclamation*[t] shall issue out at the same time with the *exigent*, commanding the sheriff of the county wherein the defendant dwells to make three proclamations thereof in places the most notorious, and most likely to come to his knowlege, a month before the outlawry shall take place. Such *outlawry* is putting a man out of the protection of the law, so that he is incapable to bring any action for redress of injuries; and it is also attended with a forfeiture of all one's goods and chattels to the king. And therefore, till some time after the conquest, no man could be outlawed but for felony; but in Bracton's time, and somewhat earlier, process of outlawry was ordained to lie in all actions for trespasses *vi et armis*[u]. And since, by a variety of statutes (the same which allow the writ of *capias* before-mentioned) process of outlawry doth lie in divers actions that are merely civil; provided they be commenced by original and not by bill[w]. If after outlawry the defendant appears publicly, he may be arrested by a writ of *capias utlagatum*[x], and committed till the outlawry be reversed. Which reversal may be had by the defendant's appearing personally in court (and in the king's bench without any personal appearance, so that he appears by attorney, according to statute 4 & 5 W. & M. c. 18.) and any plausible cause, however slight, will in general be sufficient to reverse it, it being considered only as a process to compel an appearance. But then the defendant must pay full costs, and put the plaintiff in the same condition, as if he had appeared before the writ of *exigi facias* was awarded.

SUCH is the first process in the court of *common pleas*. In the *king's bench* they *may* also (and frequently *do*) proceed in certain causes, particularly in actions of ejectment and trespass, by *original* writ, with *attachment* and *capias* thereon[y]; returnable, not at Westminster, where the common pleas are now fixed in consequence of *magna carta*, but "*ubicunque fuerimus in Anglia*,"

---

[t] Append. Nº. III. §. 2.
[u] Co. Litt. 128.
[w] 1 Sid. 159.
[x] Append. Nº. III. §. 2.
[y] Ibid. Nº. II. §. 1.

where-

wherefoever the king shall then be in England; the king's bench being removeable into any part of England at the pleasure and discretion of the crown. But the more usual method of proceeding therein is without any original, but by a peculiar species of process entitled a *bill of Middlesex*; and therefore so entitled, because the court now sits in that county; for if it sate in *Kent*, it would then be a *bill of Kent*. For though, as the justices of this court have, by it's fundamental constitution, power to determine all offences and trespasses, by the common law and custom of the realm[z], it needed no original writ from the crown to give it cognizance of any misdemesnor in the county wherein it resides; yet as, by this court's coming into any county, it immediately superseded the ordinary administration of justice by the general commissions of *eyre* and of *oyer and terminer*[a], a process of it's own became necessary, within the county where it sate, to bring in such persons as were accused of committing any *forcible* injury. The bill of Middlesex[b] is a kind of *capias*, directed to the sheriff of that county, and commanding him to take the defendant, and have him before our lord the king at Westminster on a day prefixed, to answer to the plaintiff of a plea of trespass. For this accusation of trespass it is, that gives the court of king's bench jurisdiction in other civil causes, as was formerly observed; since, when once the defendant is taken into custody of the marshall, or prison-keeper of this court, for the supposed trespass, he, being then a prisoner of this court, may here be prosecuted for any other species of injury. Yet, in order to found this jurisdiction, it is not necessary that the defendant be actually the marshall's prisoner; for, as soon as he appears, or puts in bail, to the process, he is deemed by so doing to be in such custody of the marshall, as will give the court a jurisdiction to proceed[c]. And, upon these accounts, in the bill or process a complaint of trespass is always suggested, whatever else may be the real cause of action. This bill of Middlesex must be served on the defendant by the sheriff, if he finds him in that county: but, if he

---

[z] Bro. *Abr. t. oyer & determiner*. 8.
[a] Bro. *Abr. t. jurisdiction*. 66. 3 Inst. 27.
[b] Append. N°. III. §. 3.
[c] 4 Inst. 72.

returns

returns "*non est inventus*," then there issues out a writ of *latitat*[d], to the sheriff of another county, as Berks; which is similar to the *testatum capias* in the common pleas, and recites the bill of Middlesex and the proceedings thereon, and that it is testified that the defendant "*latitat et discurrit*" lurks and wanders about in Berks; and therefore commands the sheriff to take him, and have his body in court on the day of the return. But, as in the common pleas the *testatum capias* may be sued out upon only a supposed, and not an actual, preceding *capias*; so in the king's bench a *latitat* is usually sued out upon only a supposed, and not an actual, *bill of Middlesex*. So that, in fact, a *latitat* may be called the first process in the court of king's bench, as the *testatum capias* is in the common pleas. Yet, as in the common pleas, if the defendant lives in the county wherein the action is laid, a common *capias* suffices; so in the king's bench likewise, if he lives in Middlesex, the process must still be by *bill of Middlesex* only.

IN the exchequer the first process is by writ of *quo minus*, in order to give the court a jurisdiction over pleas between party and party. In which writ[e] the plaintiff is alleged to be the king's farmer, or debtor, and that the defendant hath done him the injury complained of, *quo minus sufficiens existit*, by which he is the less able, to pay the king his rent, or debt. And upon this the defendant may be arrested as upon a *capias* from the common pleas.

THUS differently do the three courts set out at first, in the commencement of a suit; for which the reason is obvious: since by this means the two courts of king's bench and exchequer entitle themselves to hold plea in subjects causes, which by the original constitution of Westminster-hall they were not empowered to do. Afterwards, when the cause is once drawn into the respective courts, the method of pursuing it is pretty much the same in all of them.

[d] Append. N°. III. §. 3.  [e] *Ibid.* §. 4.

IF the sheriff has found the defendant upon any of the former writs, the *capias, latitat, &c,* he was antiently obliged to take him into custody, in order to produce him in court upon the return, however small and minute the cause of action might be. For, not having obeyed the original summons, he had shewn a contempt of the court, and was no longer to be trusted at large. But when the summons fell into disuse, and the *capias* became in fact the first process, it was thought hard to imprison a man for a contempt which was only supposed: and therefore in common cases by the gradual indulgence of the courts (at length authorized by statute 12 Geo. I. c. 29. which was amended by statute 5 Geo. II. c. 27. and made perpetual by statute 21 Geo. II. c. 3.) the sheriff or his officer can now only personally serve the defendant with a copy of the writ or process, and with notice in writing to appear by his attorney in court to defend this action; which in effect reduces it to a mere summons. And if the defendant thinks proper to appear upon this notice, his appearance is recorded, and he puts in sureties for his future attendance and obedience; which sureties are called *common bail,* being the same two imaginary persons that were pledges for the plaintiff's prosecution, John Doe and Richard Roe. Or, if the defendant does not appear upon the return of the writ, or within four (or, in some cases, eight) days after, the plaintiff may enter an appearance for him, as if he had really appeared; and may file common bail in the defendant's name, and proceed thereupon as if the defendant had done it himself.

BUT if the plaintiff will make *affidavit,* or assert upon oath, that the cause of action amounts to ten pounds or upwards, then in order to arrest the defendant, and make him put in substantial sureties for his appearance, called *special bail,* it is required by statute 13 Car. II. st. 2. c. 2. that the true cause of action should be expressed in the body of the writ or process. This statute (without any such intention in the makers) had like to have ousted the king's bench of all it's jurisdiction over civil injuries

without

without force : for, as the bill of Middlesex was framed only for actions of trespass, a defendant could not be arrested and held to bail thereupon for breaches of civil contracts. But to remedy this inconvenience, the officers of the king's bench devised a method of adding what is called a clause of *ac etiam* to the usual complaint of trespass; the bill of Middlesex commanding the defendant to be brought in to answer the plaintiff of a plea of trespass, *and also* to a bill of debt [f]: the complaint of trespass giving cognizance to the court, and that of debt authorizing the arrest. In return for which, lord chief justice North a few years afterwards, in order to save the suitors of his court the trouble and expense of suing out special originals, directed that in the common pleas, besides the usual complaint of breaking the plaintiff's close, a clause of *ac etiam* might be also added to the writ of *capias*, containing the true cause of action; as, " that the said Charles " the defendant may answer to the plaintiff of a plea of trespass " in breaking his close : and also, *ac etiam*, may answer him, ac- " cording to the custom of the court, in a certain plea of trespass " upon the case, upon promises, to the value of twenty pounds, " &c [g]." The sum sworn to by the plaintiff is marked upon the back of the writ; and the sheriff, or his officer the bailiff, is then obliged actually to arrest or take into custody the body of the defendant, and, having so done, to return the writ with a *cepi corpus* endorsed thereon.

A N *arrest* must be by corporal seising or touching the defendant's body; after which the bailiff may justify breaking open the house in which he is, to take him : otherwise he has no such power; but must watch his opportunity to arrest him. For every man's house is looked upon by the law to be his castle of defence and asylum, wherein he should suffer no violence. Which principle is carried so far in the civil law, that for the most part not so much as a common citation or summons, much less an arrest, can be executed upon a man within his own walls [h]. Peers of

[f] Append. N°. III. §. 3.
[g] Lill. pract. Reg. *t. ac etiam.* North's life of lord Guilford. 99.
[h] *Ff.* 2. 4. 18—21.

the

the realm, members of parliament, and corporations, are privileged from arrests; and of course from outlawries[i]. And against them the process to inforce an appearance must be by summons and distress infinite, instead of a *capias*. Also clerks, attorneys, and all other persons attending the courts of justice (for attorneys, being officers of the court, are always supposed to be there attending) are not liable to be arrested by the ordinary process of the court, but must be sued by *bill* (called usually a *bill of privilege*) as being personally present in court[k]. Clergymen performing divine service, and not merely staying in the church with a fraudulent design, are for the time privileged from arrests, by statute 50 Edw. III. c. 5. and 1 Ric. II. c. 16. as likewise members of convocation actually attending thereon, by statute 8 Hen. VI. c. 1. Suitors, witnesses, and other persons, necessarily attending *any* courts of record upon business, are not to be arrested during their actual attendance, which includes their necessary coming and returning. And no arrest can be made in the king's presence, nor within the verge of his royal palace, nor in any place where the king's justices are actually sitting. The king hath moreover a special prerogative, (which indeed is very seldom exerted[l]) that he may by his *writ of protection* privilege a defendant from all personal, and many real, suits for one year at a time, and no longer; in respect of his being engaged in his service out of the realm[m]. And the king also by the common law might take his creditor into his protection, so that no one might sue or arrest him till the king's debt were paid[n]: but by the statute 25 Edw. III. st. 5. c. 19. notwithstanding such protection, another creditor may proceed to judgment against him, with a

---

[i] Whitelock of parl. 206, 207.
[k] Bro. *Abr. t. bille.* 29. 12 Mod. 163.
[l] Sir Edward Coke informs us, (1 Inst. 131.) that herein "he could say nothing of "his own experience; for albeit queen Eli- "zabeth maintained many wars, yet she "granted few or no protections: and her "reason was, that he was no fit subject to "be employed in her service, that was sub- "ject to other mens actions; left she might "be thought to delay justice." But king William, in 1692, granted one to lord Cutts, to protect him from being outlawed by his taylor: (3 Lev. 332.) which is the last that appears upon our books.
[m] Finch. L. 454. 3 Lev. 332.
[n] F. N. B. 28. Co. Litt. 131.

ftay of execution, till the king's debt be paid; unlefs fuch creditor will undertake for the king's debt, and then he fhall have execution for both. And, laftly, by ftatute 29 Car. II. c. 7. no arreft can be made, nor procefs ferved upon a funday, except for treafon, felony, or breach of the peace.

WHEN the defendant is regularly arrefted, he muft either go to prifon, for fafe cuftody; or put in *fpecial bail* to the fheriff. For, the intent of the arreft being only to compel an appearance in court at the return of the writ, that purpofe is equally anfwered, whether the fheriff detains his perfon, or takes fufficient fecurity for his appearance, called *bail* (from the French word, *bailler*, to deliver) becaufe the defendant is bailed, or delivered, to his fureties, upon their giving fecurity for his appearance; and is fuppofed to continue in their friendly cuftody inftead of going to gaol. The method of putting in bail to the fheriff is by entering into a bond or obligation, with one or more fureties (not fictitious perfons, as in the former cafe of common bail, but real, fubftantial, refponfible bondfmen) to infure the defendant's appearance at the return of the writ; which obligation is called the *bail bond*[o]. The fheriff, if he pleafes, *may* let the defendant go without any fureties; but that is at his own peril: for, after once taking him, the fheriff is bound to keep him fafely, fo as to be forthcoming in court; otherwife an action lies againft him for an efcape. But, on the other hand, he is obliged, by ftatute 23 Hen. VI. c. 10. to take (if it be tendered) a fufficient bailbond: and, by ftatute 12 Geo. I. c. 29. the fheriff fhall take bail for no other fum than fuch as is fworn to by the plaintiff, and endorfed on the back of the writ.

UPON the return of the writ, or within four days after, the defendant muft *appear* according to the exigency of the writ. This *appearance* is effected by putting in and juftifying bail *to the action*; which is commonly called putting in bail *above*. If this be not done, and the bail that were taken by the fheriff

[o] Append. N°. III. §. 5.

*below*

*below* are responsible persons, the plaintiff may take an assignment from the sheriff of the bail-bond (under the statute 4 & 5 Ann. c. 16.) and bring an action thereupon against the sheriff's bail. But if the bail, so accepted by the sheriff, be insolvent persons, the plaintiff may proceed against the sheriff himself, by calling upon him, first, to return the writ (if not already done) and afterwards to bring in the body of the defendant. And, if the sheriff does not then cause sufficient bail to be put in *above*, he will himself be responsible to the plaintiff.

THE bail *above*, or bail *to the action*, must be put in either in open court, or before one of the judges thereof; or else, in the country, before a commissioner appointed for that purpose by virtue of the statute 4 W. & M. c. 4. which must be transmitted to the court. These bail, who must at least be two in number, must enter into a recognizance [p] in court or before the judge or commissioner, whereby they do jointly and severally undertake, that if the defendant be condemned in the action he shall pay the costs and condemnation, or render himself a prisoner, or that they will pay it for him : which recognizance is transmitted to the court in a slip of parchment intitled a *bail piece* [q]. And, if required, the bail must *justify* themselves in court, or before the commissioner in the country, by swearing themselves house-keepers, and each of them to be worth double the sum for which they are bail, after payment of all their debts. This answers in some measure to the *stipulatio* or *satisdatio* of the Roman laws [r], which is mutually given by each litigant party to the other : by the plaintiff, that he will prosecute his suit, and pay the costs if he loses his cause; in like manner as our law still requires nominal pledges of prosecution from the plaintiff : by the defendant, that he shall continue in court, and abide the sentence of the judge, much like our special bail; but with this difference, that the *fidejussores* were there absolutely bound *judicatum solvere*, to see the costs and condemna-

[p] Append. N°. III. §. 5.      [r] *Inst. l.* 4. *t.* 11. *Ff. l.* 2. *t.* 8.
[q] *Ibid.*

tion paid at all events: whereas our special bail may be discharged, by surrendering the defendant into custody, within the time allowed by law; for which purpose they are at all times intitled to a warrant to apprehend him[s].

SPECIAL bail is required (as of course) only upon actions of debt, or actions on the case in trover or for money due, where the plaintiff can swear that the cause of action amounts to ten pounds: but in actions where the damages are precarious, being to be assessed *ad libitum* by a jury, as in actions for words, ejectment, or trespass, it is very seldom possible for a plaintiff to swear to the amount of his cause of action; and therefore no special bail is taken thereon, unless by a judge's order or the particular directions of the court, in some peculiar species of injuries, as in cases of mayhem or atrocious battery; or upon such special circumstances, as make it absolutely necessary that the defendant should be kept within the reach of justice. Also in actions against heirs, executors, and administrators, for debts of the deceased, special bail is not demandable: for the action is not so properly against them in person, as against the effects of the deceased in their possession. But special bail is required even of them, in actions for a *devastavit*, or wasting the goods of the deceased; that wrong being of their own committing.

THUS much for *process*; which is only meant to bring the defendant into court, in order to contest the suit, and abide the determination of the law. When he appears either in person as a prisoner, or out upon bail, then follow the *pleadings* between the parties, which we shall consider at large in the next chapter.

[s] 2 Show. 202. 6 Mod. 231.