# Exhibit 11

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| MARIAN RYAN, in her official capacity as Middlesex County District Attorney; RACHAEL ROLLINS, in her official capacity as Suffolk County District Attorney; COMMITTEE FOR PUBLIC COUNSEL SERVICES; and the CHELSEA COLLABORATIVE,<br><br>    Plaintiffs,<br><br>v.<br><br>U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT; MATTHEW T. ALBENCE, in his official capacity as Acting Deputy Director of U.S. Immigration and Customs Enforcement and Senior Official Performing the Duties of the Director; TODD M. LYONS, in his official capacity as Immigration and Customs Enforcement and Removal Operation Acting Field Office Director; U.S. DEPARTMENT OF HOMELAND SECURITY; and KEVIN McALEENAN, in his official capacity as Acting Secretary of United States Department of Homeland Security,<br><br>    Defendants. | Civil Action No. _____ |

**DECLARATION OF JENNIFER KLEIN**

I, Jennifer Klein, declare as follows:

1. I am currently an Immigration Law Specialist for the Immigration Impact Unit ("IIU") of the Committee for Public Counsel Services ("CPCS"), a named party in this action. I submit this declaration in support of Plaintiffs' Motion for Preliminary Injunction. If called to testify, I could truthfully and completely testify to the facts stated below. This declaration is

based upon my personal knowledge, my experience with the IIU, and information provided to me in connection with my work with the IIU.

2. The Immigration Impact Unit of CPCS provides expertise on the interplay of federal immigration and state criminal law to all court-appointed counsel in Massachusetts, which includes both CPCS-employed staff attorneys and private court-appointed attorneys who are certified and supervised by CPCS. I have been employed as an Immigration Law Specialist in the IIU since 2010. In this capacity, I provide training, support, and advice on individual cases to all CPCS staff attorneys and bar advocates on the immigration consequences of criminal conduct. I distribute written training and resource materials about this area of law and I lecture frequently in Massachusetts on the intersection of criminal and immigration law.

3. As part of my responsibilities in the IIU, I, along with my colleagues, follow Immigration and Customs Enforcement (ICE) enforcement policies, procedures and trends, especially as they relate to the criminal justice system. Because of this, we have been monitoring immigration arrests in Massachusetts courthouses for a number of years.

4. Since early spring of 2017, ICE has increasingly used state courthouses, especially Massachusetts courthouses, as a location for its enforcement efforts. Because of this, significant IIU time and resources have been consumed by 1) tracking the ways in which ICE courthouse arrests take place, 2) responding to the effects of courthouse arrests, and 3) assisting defense attorneys whose clients have been impacted by this ICE enforcement policy.

ICE enforcement in and around courthouses

5. Although the IIU began hearing about a dramatic increase in ICE civil arrests in and around Massachusetts state courthouses in early spring of 2017, on January 10, 2018, the

2

Department of Homeland Security (DHS) formally issued a Directive and "FAQs" detailing its enforcement practices inside courthouses. The Directive and FAQs do not address arrests immediately outside of courthouses. The documents suggest that arrests inside courthouses target specific individuals, namely those with criminal convictions, "gang members," national security or public safety threats, those who have been previously ordered removed, and those who have illegally re-entered after deportation. However, a footnote in the Directive states that enforcement decisions will be made on a case-by-case basis, suggesting that the arrest of any removable noncitizen inside a courthouse remains possible.

6. The IIU receives many calls from defense counsel detailing instances in which undocumented individuals, who do not fall within any of the listed categories and some who have lived in the United States for many years, are arrested by ICE in and around Massachusetts state courthouses.

7. The ICE FAQs also state that ICE will make every effort to arrest individuals only after their court matters are concluded. This is contrary to what we have seen in practice in Massachusetts. Our office regularly receives calls from defense counsel detailing incidents in which ICE arrests an individual outside the courthouse prior to entering the courthouse for their trial or pre-trial hearing. In many instances, the defense attorney is already inside the courthouse and only learns after the client has been defaulted on the pending criminal case that ICE arrested her client outside the courthouse (for example, in the parking lot, on the courthouse steps or on the sidewalk just outside the courthouse). Our office also receives many calls from defense counsel informing us that their clients were arrested by ICE walking out of the courthouse after a scheduled court date. Most often these are not final court appearances, but instead they are status dates and the case in not complete.

8. The IIU also receives many calls from defense attorneys while in court informing us that ICE is in the courthouse intending to arrest their clients. Defense counsel calls us for advice regarding what they and their clients can and should do with respect to possible ICE arrest.

Responding to the effects of ICE arrests

9. When a criminal defendant fails to appear in court due to an ICE arrest, a default enters against the defendant and an arrest warrant usually issues. When a default enters, the standard practice is that, if defense counsel is a private, court-appointed attorney, the attorney will close out the case and cease representation of the client. This leaves the defendant with no counsel to advocate on the pending case. In particular, if the defendant was arrested by ICE and is being held in immigration custody, there is no attorney who can request that the defendant be transported from ICE custody to a Massachusetts criminal court for future hearing dates. Because of this, the IIU handles many requests from criminal defendants and their immigration attorneys for assistance in finding counsel to request and coordinate such transport.

10. ICE arrests at courthouses often result in state criminal cases remaining indefinitely in default status. This leaves countless Massachusetts criminal cases unresolved. For noncitizen defendants, having open criminal matters - no matter how minor - may lead to the denial of release on immigration bond and denial of relief from removal. Moreover, if a person is deported with an open criminal case, the negative discretionary impact of the open case will make it far more difficult, if not impossible, to be granted lawful admission to the United States in the future.

11. On the other hand, if a defendant with an open Massachusetts criminal case is released from ICE custody and returns to state court to remove the default and proceed with the pending case, the common practice is for a new defense attorney to be appointed. An attorney who is "on duty" in the court that day for arraignments and new cases will normally be appointed to represent someone who is removing a default in a pending case. This requires the development of a new attorney-client relationship, and often requires any research, investigation, interviews with witnesses, negotiation with the prosecutor or other work that was done by the prior attorney to be re-done by the newly appointed counsel. The appointment of new counsel for noncitizen clients who default on pending criminal cases due to ICE courthouse arrests thus results in the expenditure by CPCS of substantial additional resources.

Assisting defense counsel in response to ICE arrests

12. Because of ICE's Directive and the dramatic increase in civil ICE arrests in Massachusetts, I and other members of the IIU have been forced to devote significant time and resources to monitoring ICE activity in and around the state courthouses in order to provide guidance to defense counsel that enables them to properly advise their clients on what may happen when they appear in court and the risk of ICE arrest. In addition, the IIU now spends a great deal of time drafting practice advisories and training defense attorneys about how to zealously advocate for their clients when ICE is present in court and arresting their clients without running afoul of federal law. Although in the past our trainings have focused almost exclusively on the immigration consequences of criminal convictions, for the last two years, a significant portion of our training time has been committed to describing ICE enforcement in courthouses and how defense counsel and defendants should respond.

13. On a regular basis, the IIU receives calls from defense counsel seeking assistance after an ICE arrest at a courthouse. During these calls, we advise defense counsel about locating the defendant in ICE custody and how to effectively continue their representation while their client in is ICE custody.

14. The IIU has also faced dramatically increasing numbers of attorneys and defendants calling for advice regarding transport from ICE custody back to state court for hearing dates. The IIU has spent many months working with ICE, the Sheriff's Departments who house immigration detainees and the Trial Court to create a consistently functioning procedure for this purpose. To this date, there is no reliable process, and many criminal defendants in immigration custody are unable to attend Massachusetts court dates, resulting in continuing defaults and open cases.

15. Finally, the IIU has seen the substantial harm over the last two years that ICE courthouse arrests have caused to our clients and to the criminal justice system. The IIU has devoted significant time and resources to ending this federal practice. In early 2017, our office contacted the Massachusetts Executive Office of the Trial Court to discuss the increase in ICE courthouse arrests that we were seeing. We then worked with the Massachusetts Bar Association (MBA) Working Group on Immigration to draft a proposed ICE courthouse arrest policy for the Trial Court to consider issuing regarding the use of courthouses for ICE enforcement. Chief Justice Carey of the Trial Court met with the MBA working group in September 2017 to discuss ICE courthouse arrests. In November 2017, C.J. Carey issued a policy memo regarding court personnel involvement in immigration enforcement and interactions with ICE officers. The memo places some limitations on ICE arrests in courthouses but does not prohibit them.

16.     In our continuing effort to protect noncitizens from ICE arrest at courthouses, the IIU filed a petition for a writ of protection to a single justice of the Supreme Judicial Court (SJC), pursuant to M.G.L. ch. 211 § 3, in March 2018. The petition sought a broad writ of protection prohibiting ICE arrest of all noncitizens with business in a Massachusetts courthouse while they are coming to, attending, or leaving Massachusetts courthouses. Although the single justice acknowledged that Massachusetts common law indisputably includes a longstanding privilege against civil arrest while attending Massachusetts courts on official business, she denied the writ of protection in September 2018, largely because she concluded she did not have jurisdiction over ICE enforcement actions.

17.     After denial of the SJC petition, the IIU immediately began preparing to bring this lawsuit, including identifying potential counsel and coordinating with potential plaintiffs.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and accurate

*[signature]*
Jennifer Klein

Dated: April 26, 2019