UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| MARIAN RYAN, in her official capacity as Middlesex County District Attorney; RACHAEL ROLLINS, in her official capacity as Suffolk County District Attorney; COMMITTEE FOR PUBLIC COUNSEL SERVICES; and the CHELSEA COLLABORATIVE, INC., <br><br> Plaintiffs, <br><br> v. <br><br> U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT; MATTHEW T. ALBENCE, in his official capacity as Acting Deputy Director of U.S. Immigration and Customs Enforcement and Senior Official Performing the Duties of the Director; TODD M. LYONS, in his official capacity as Immigration and Customs Enforcement, Enforcement and Removal Operations, Acting Field Office Director; U.S. DEPARTMENT OF HOMELAND SECURITY; and KEVIN McALEENAN, in his official capacity as Acting Secretary of United States Department of Homeland Security, <br><br> Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | Civil Action No. 1:19-cv-11003-IT <br> **LEAVE TO REPLY GRANTED MAY 15, 2019 (ECF NO. 32)** |

**REPLY IN SUPPORT OF PLAINTIFFS'
MOTION FOR PRELIMINARY INJUNCTION**

## TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................................. 1

ARGUMENT ....................................................................................................................... 2

   I.   This Court can reach the merits of Plaintiffs' claim. ...................................... 2

      A.   Plaintiffs have Article III standing. .................................................. 2

      B.   Plaintiffs' claims fall within the relevant zone of interest. .................................. 4

      C.   Plaintiffs assert a valid APA claim. .................................................. 5

   II.   Congress did not authorize ICE to conduct civil courthouse arrests. ........................... 6

      A.   At common law, those attending court on official business were privileged from civil arrest. .................................................................................. 7

      B.   The INA incorporates, not abrogates, the common-law privilege. ..................... 9

   III.   The equities strongly favor the limited preliminary injunctive relief Plaintiffs seek. ................................................................................................................. 12

CONCLUSION .................................................................................................................. 12

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Al Otro Lado, Inc. v. Nielsen*,
  327 F. Supp. 3d 1284 (S.D. Cal. 2018)....................................................................5

*Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*,
  459 U.S. 519 (1983)................................................................................................7

*Bank of Am. v. City of Miami*,
  137 S. Ct. 1296 (2017)...........................................................................................8

*Bennett v. Spear*,
  520 U.S. 154 (1997)............................................................................................4, 5

*City of Milwaukee v. Illinois*,
  451 U.S. 304 (1981)................................................................................................6

*Clark v. Martinez*,
  543 U.S. 371 (2005)..............................................................................................11

*Clarke v. Sec's Industry Ass'n*,
  479 U.S. 388 (1987)................................................................................................5

*Demore v. Kim*,
  538 U.S. 510 (2003)................................................................................................9

*E. Bay Sanctuary Covenant v. Trump*,
  909 F.3d 1219 (9th Cir. 2018) ...............................................................................5

*Gregory v. Ashcroft*,
  501 U.S. 452 (1991)..............................................................................................11

*Halsey v. Stewart*,
  4 N.J.L. 366 (N.J. 1817)........................................................................................8

*Havens Realty Corp. v. Coleman*,
  455 U.S. 363 (1982)................................................................................................2

*INS v. Lopez-Mendoza*,
  468 U.S. 1036 (1984)..........................................................................................6, 9

*Jennings v. Rodriguez*,
  138 S. Ct. 830 (2018)..............................................................................................5

*Larned v. Griffin*,
   12 F. 590 (D. Mass. 1882) ...................................................................................7

*Lewis v. Casey*,
   518 U.S. 343 (1996) ...........................................................................................11

*Lexmark Intern., Inc. v. Static Control Components, Inc.*,
   572 U.S. 118 (2014) ...........................................................................................10

*Linda R.S. v. Richard D.*,
   410 U.S. 614 (1973) .............................................................................................3

*Massachusetts v. Mellon*,
   262 U.S. 447 (1923) .............................................................................................3

*Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians v. Patchak*,
   567 U.S. 209 (2012) ..........................................................................................4, 5

*New York v. United States*,
   505 U.S. 144 (1992) .............................................................................................3

*Northern Light Technology, Inc. v. N. Lights Club*,
   236 F.3d 57 (1st Cir. 2001) ..................................................................................8

*Playboy Enterprises, Inc. v. Pub. Serv. Comm'n of Puerto Rico*,
   906 F.2d 25 (1st Cir. 1990) ..................................................................................3

*Simon v. E. Kentucky Welfare Rights Org.*,
   426 U.S. 26 (1976) ...............................................................................................4

*Stewart v. Ramsay*,
   242 U.S. 128 (1916) ......................................................................................1, 7, 9

*Tennessee v. Lane*,
   541 U.S. 509 (2004) ...........................................................................................11

*Thompson's Case*,
   122 Mass. 428 (1877) ..........................................................................................7

*U.S. Army Corps of Engineers v. Hawkes Co., Inc.*,
   136 S. Ct. 1807 (2016) .........................................................................................6

*United Food & Commercial Workers Union Local 751 v. Brown Grp., Inc.*,
   517 U.S. 544 (1996) .............................................................................................3

*Valley Bank & Trust Co. v. Marrewa*,
   237 N.E.2d 677 (Mass. 1968) ............................................................................11

*Weyerhaeuser Co. v. U.S. Fish and Wildlife Serv.*,
   139 S. Ct. 361 (2018)..........................................................................................5

*Wine and Spirits Retailers, Inc. v. Rhode Island*,
   418 F.3d 36 (1st Cir. 2005).................................................................................3

**Statutes**

8 U.S.C. § 1226(a) .................................................................................................10

8 U.S.C. § 1226(e) ...................................................................................................5

8 U.S.C. § 1252.......................................................................................................6

8 U.S.C. § 1357(a) .................................................................................................10

**Other Authorities**

3 William Blackstone, *Commentaries on the Laws of England* (1768)..........................................7

## TABLE OF ABBREVIATIONS

| Chelsea Collaborative or Collaborative | Plaintiff Chelsea Collaborative, Inc. |
|---|---|
| CPCS | Plaintiff Committee for Public Counsel Services |
| DHS | United States Department of Homeland Security |
| Directive | ICE Directive No. 11072.1, "Civil Immigration Enforcement Actions Inside Courthouses" |
| District Attorneys or DAs | Plaintiffs Marian Ryan, Middlesex County District Attorney, and Rachael Rollins, Suffolk County District Attorney |
| Espinoza Decl. | Declaration of Ivan Espinoza-Madrigal in Support of Plaintiffs' Motion for Preliminary Injunction, attached as Exhibit 13 to the Zimmer Decl. |
| Foley Decl. | Declaration of Anne Foley in Support of Plaintiffs' Motion for Preliminary Injunction, attached as Exhibit 12 to the Zimmer Decl. |
| ICE | United States Immigration and Customs Enforcement |
| INA | Immigration and Nationality Act |
| Klein Decl. | Declaration of Jennifer Klein in Support of Plaintiffs' Motion for Preliminary Injunction, attached as Exhibit 11 to the Zimmer Decl. |
| Memo | Plaintiffs' Memorandum of Law in Support of Plaintiffs' Motion for Preliminary Injunction, ECF No. 6 |
| Moshier Decl. | Declaration of Michaela Moshier in Support of Plaintiffs' Motion for Preliminary Injunction, attached as Exhibit 14 to the Zimmer Decl. |
| Opp. | Defendants' Opposition to the Motion for Preliminary Injunction, ECF No. 28 |
| Vega Decl. | Declaration of Gladys Vega in Support of Plaintiffs' Motion for Preliminary Injunction, attached as Exhibit 10 to the Zimmer Decl. |
| Zimmer Decl. | Declaration of David Zimmer in Support of Plaintiffs' Motion for Preliminary Injunction |

## INTRODUCTION

Defendants do not dispute that the Directive, and ICE's corresponding civil-courthouse-arrest practice, have made the Massachusetts courts off limits to many Commonwealth residents. Massachusetts residents tolerate domestic violence, unpaid wages, and other violations rather than risk appearing in court. Vega Decl. ¶¶ 12-16. Victims of and witnesses to crimes will not appear in court. Vega Decl. ¶¶ 10-11, 13; Moshier Decl. ¶¶ 3-4. And criminal defendants refuse to appear in court or are prevented from appearing in court on pending cases after being arrested by ICE in or around courthouses, including those charged with non-violent offenses and those appearing to have charges dismissed. *E.g.*, Klein Decl. ¶¶ 6-7, 10. Such an intrusion into the administration of justice, Defendants assert, is simply a consequence of ICE's broad powers.

ICE's power may be broad, but it is not unlimited, and it does not encompass the authority to civilly arrest those attending court on official business. ICE is a federal agency, and its civil-arrest authority is only as broad as the authority Congress granted. Under established principles of statutory interpretation that Defendants do not and could not dispute, Congress's general grant of civil-arrest authority presumptively incorporates common-law limitations on that authority. The common law has long recognized a "well settled" privilege barring the civil arrest of those attending court on official business—a privilege that rests on the notion that courts cannot function if they are not "open, accessible, free from interruption, and [] cast a perfect protection around every man who necessarily approaches them." *Stewart v. Ramsay*, 242 U.S. 128, 129 (1916). Plaintiffs are not disputing Congress's power over immigration, or urging this Court to create a new, freestanding federal-common-law privilege. Plaintiffs' argument is that, based on standard interpretive principles, Congress did not authorize ICE to civilly arrest those attending court on official business, and ICE therefore has no power to do so.

Defendants' attempts to avoid this straightforward argument lack merit. Based on the

1

specific facts of a few Supreme Court decisions, Defendants seek to limit the common-law

privilege to an esoteric set of circumstances. But the many cases discussing the privilege,

including the very cases on which Defendants rely, make clear that the privilege is not so limited.

Indeed, the privilege could not serve its intended purpose if it were limited in the ways

Defendants suggest. Defendants' argument that the INA abrogated the privilege fares no better:

Defendants cannot point to any provision suggesting that Congress intended to grant ICE a

broader civil-arrest authority than existed at common law. Indeed, the very provisions on which

Defendants rely suggest that the opposite is true. This Court should grant the motion.

## ARGUMENT

**I.      This Court can reach the merits of Plaintiffs' claim.**

Attempting to shield their action from judicial scrutiny, Defendants raise a series of

jurisdictional and prudential obstacles to this Court's review. These arguments lack merit.

### A.      Plaintiffs have Article III standing.

Plaintiffs are not invoking a privilege on behalf of third parties, but are asserting that

ICE's statutorily unauthorized conduct harms *Plaintiffs themselves*. Plaintiffs readily satisfy

Article III's injury-in-fact and traceability requirements.

Injury in fact. The undisputed factual record before this Court shows that ICE's action

has made Massachusetts courts inaccessible to large segments of the Massachusetts population,

leading victims and witnesses to avoid reporting crime and refuse to testify in court, and

preventing individuals with civil claims or defenses from asserting them. *E.g.*, Vega Decl. ¶¶ 6-

16; Moshier Decl. ¶ 4. This has caused Plaintiffs significant economic harms and resource

diversion; obstructed Plaintiffs from carrying out their core missions of prosecution, criminal

defense, and protecting members through civil litigation; and barred the Collaborative's

members from accessing courts. These injuries satisfy Article III. *E.g. Havens Realty Corp. v.*

2

*Coleman*, 455 U.S. 363, 379 (1982) ("injury to the organization's activities—with the consequent drain on the organization's resources" is a cognizable "injury in fact").

Defendants do not dispute that these injuries exist, but assert that they are not "cognizable." That is wrong. First, Plaintiffs are not challenging *who* ICE seeks to remove, so the cases Defendants cite barring challenges to the "prosecution or nonprosecution of another," *Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973), are irrelevant. That, alone, disposes of Defendants' challenge to the Collaborative's injury.[1] Second, there is no basis for Defendants' claim that the types of injuries the DAs and CPCS assert are not "cognizable" simply because the DAs and CPCS are government agencies; indeed, the implication of Defendants' argument is that state and local governments *never* have standing to sue the federal government based on economic harm. Defendants cite no case that supports such an unprecedented exception to established standing principles: *New York v. United States*, 505 U.S. 144 (1992), is not about standing, and the state in *Massachusetts v. Mellon*, 262 U.S. 447, 483 (1923), asserted *no injury at all* other than the "mere enactment of the statute." The idea that Plaintiffs' standing here would allow them to challenge "any federal criminal statute" is absurd. Plaintiffs are not asserting incidental injury from Defendants' general enforcement of the immigration laws, but direct injury from Defendants' actions targeting courts for federal immigration enforcement.

Traceability. Traceability does not require that Defendants' action "be the final link in the chain of events leading up to the alleged harm"; it is enough that Defendants injure Plaintiffs "by 'coercive effect upon the action of someone else.'" *Wine and Spirits Retailers, Inc. v. Rhode*

---

[1] Defendants' challenge (at 8 n.4) to the Collaborative's assertion of associational standing is meritless, as Defendants identify no reason its members' participation in this lawsuit is required. *See United Food & Commercial Workers Union Local 751 v. Brown Grp., Inc.*, 517 U.S. 544, 546 (1996) ("'[I]ndividual participation' is not normally necessary when an association seeks prospective or injunctive relief for its members."); *Playboy Enterprises, Inc. v. Pub. Serv. Comm'n of Puerto Rico*, 906 F.2d 25, 35 (1st Cir. 1990) (membership participation not necessary to resolve question of law not unique to any individual).

*Island*, 418 F.3d 36, 45 (1st Cir. 2005) (quoting *Bennett v. Spear*, 520 U.S. 154, 169 (1997)).  In

disputing traceability, Defendants ignore both Plaintiffs' allegations of harm caused by

Defendants' *actual arrest* of those appearing in court, and the undisputed factual record, which

shows that, prior to Defendants' challenged action, Massachusetts residents potentially subject to

removal freely attended Massachusetts state courts, but that now many in that same position will

not appear in a Massachusetts court for any reason.  *E.g.*, Vega Decl. ¶¶ 6-16.  This plainly

establishes traceability, especially as to the Collaborative's members.  Unlike in *Simon v. E.*

*Kentucky Welfare Rights Org.*, 426 U.S. 26, 42 (1976), the connection between injury and

conduct is not "purely speculative," but is demonstrated and concrete.  And individuals' failure

to appear in court is not "*independent*" action that breaks the causal chain, *Bennett*, 520 U.S. at

169, but the direct, predictable result of Defendants' policy and conduct.[2]

### B.    Plaintiffs' claims fall within the relevant zone of interest.

The requirement that a plaintiff's interest "must be arguably within the zone of interests

to be protected or regulated by the statute" is not "especially demanding."  *Match-E-Be-Nash-*

*She-Wish Band of Pottawatomi Indians v. Patchak*, 567 U.S. 209, 224-25 (2012).  "The test

forecloses suit only when a plaintiff's interests are so marginally related to or inconsistent with

the purposes implicit in the statute that it cannot reasonably be assumed that Congress intended

to permit the suit."  *Id.* at 225.  Plaintiffs' interest in ensuring that their noncitizen members,

clients, victims, and witnesses can access Massachusetts courts without risking civil ICE arrest is

related to their claim that ICE has no statutory authority to conduct civil courthouse arrests.

Contrary to Defendants' brief (at 8-9), it does not matter that the civil-arrest provisions

"do not govern Plaintiffs' conduct" and "do not create any entitlement or interest that Plaintiffs

---

[2] Contrary to Defendants' brief (at 8), Plaintiffs' interest is not in evading law enforcement, but ensuring that Massachusetts courts are accessible so that Plaintiffs, and the courts, can *enforce* the law.

4

may invoke." The inquiry requires neither an "indication of congressional purpose to benefit the would-be plaintiff," *Match-E-Be-Nash*, 567 U.S. at 225, nor that "the plaintiff [be] itself the subject of the contested regulatory action," *Clarke v. Sec's Industry Ass'n*, 479 U.S. 388, 399 (1987). The two cases Defendants cite—one of which is a non-precedential in-chambers opinion—are irrelevant, as both involve claims that immigration policies had incidental impact on U.S. citizens. *See E. Bay Sanctuary Covenant v. Trump*, 909 F.3d 1219, 1245 n.10 (9th Cir. 2018); *Al Otro Lado, Inc. v. Nielsen*, 327 F. Supp. 3d 1284, 1298-1302 (S.D. Cal. 2018).

###### C.    Plaintiffs assert a valid APA claim.

Contrary to Defendants' brief (at 9-10), the scope of ICE's civil-arrest authority is not committed to ICE's unreviewable discretion. Agency action is "committed to agency discretion by law" only when "a court would have no meaningful standard against which to judge the agency's exercise of discretion." *Weyerhaeuser Co. v. U.S. Fish and Wildlife Serv.*, 139 S. Ct. 361, 370 (2018). That is plainly not true here. Whether the INA authorizes ICE to conduct civil courthouse arrests is a question of statutory interpretation. If the INA does *not* authorize such arrests, then ICE's Directive, and the civil arrests it is conducting pursuant to that Directive, violate the APA. In *Jennings v. Rodriguez*, 138 S. Ct. 830, 841 (2018), the Court rejected an argument nearly identical to that which Defendants make here, holding that "the extent of the Government's detention authority under the 'statutory framework'" is not an unreviewable "discretionary judgment" under 8 U.S.C. § 1226(e). Defendants cite cases addressing prosecutorial discretion, but Plaintiffs are not challenging Defendants' exercise of such discretion in any given case, but rather whether Congress delegated that discretion to ICE at all.

Defendants' cursory argument (at 10) that the Directive is not final agency action fares no better. Defendants do not dispute that the Directive marks the "consummation of the agency's decisionmaking process." *Bennett*, 520 U.S. at 178 (1997). Defendants' argument appears to be

that as a "statement of policy," the Directive does not carry the necessary "legal consequences." *See U.S. Army Corps of Engineers v. Hawkes Co., Inc.*, 136 S. Ct. 1807, 1815 (2016).  But agency action can be final even if it has "no authority except to give notice of how the [agency] interpreted the relevant statute, and would have effect only if and when a particular action was brought" pursuant to that interpretation.  *Id.*  Under this "pragmatic" approach, the Directive carries legal consequences, as it authorizes ICE officers to conduct civil arrests against those attending court, and it notifies the public of that authorization such that noncitizens know that they could be subject to civil arrest upon appearing in court.[3]

## II.      Congress did not authorize ICE to conduct civil courthouse arrests.

Pursuant to well established principles of statutory interpretation, when Congress invokes a common-law power in a federal statute, it presumptively incorporates common-law limitations on that power.  *See* Memo at 10-13.  At common law, the civil-arrest power could not be enforced against those attending court on official business, and the INA's general invocation of the civil-arrest power incorporates, not abrogates, that common-law rule.

Plaintiffs are not asking the Court to create a freestanding federal-common-law privilege *outside* the INA.  Cases like *City of Milwaukee v. Illinois*, 451 U.S. 304 (1981), on which Defendants rely (at 15-16), are thus inapplicable, as they address whether Congress usurped a federal-common-law doctrine through legislation, *not* whether the legislation itself incorporated longstanding common-law principles.  For similar reasons, Defendants incorrectly limit their discussion of the privilege to federal decisions (*e.g.*, at 16 n.10), as non-federal sources can reveal the common-law principles that shape the scope of the INA's grant of civil-arrest

---

[3] Defendants' argument would likely shield their action from *any* judicial review.  Defendants argue (at 10 n.5) that an individual arrest may qualify as final agency action, but that such a claim must be brought in a removal proceeding pursuant to 8 U.S.C. § 1252.  But an immigration judge generally has no authority to decide whether the arrest that initiated the proceedings was lawful.  *See INS v. Lopez-Mendoza*, 468 U.S. 1036, 1040 (1984) ("The BIA correctly ruled that '[t]he mere fact of an illegal arrest has no bearing on a subsequent deportation proceeding.'").

authority.  *See, e.g.*, *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 533 & nn. 23-28 (1983).  Under the correct inquiry, the INA incorporates the common-law privilege against civil courthouse arrests.

### A.      At common law, those attending court on official business were privileged from civil arrest.

As this Court recognized in *Larned v. Griffin*, 12 F. 590, 590 (D. Mass. 1882), "[i]t has long been settled that parties and witnesses attending in good faith any legal tribunal . . . are privileged from arrest on civil process during their attendance."  The basis for that "well settled" common-law privilege is straightforward:  The "administration of justice" would be "obstructed" if parties' and witnesses' appearances in one case could be used as a trap for a civil arrest or civil service of process in another.  *Stewart*, 242 U.S. at 129 (1916).  Defendants' attempts to cabin the scope of this privilege not only misconstrue the law, but ignore the necessarily expansive principles on which the privilege is founded.

Defendants mistakenly claim (at 10-11) that the privilege only applies to those traveling to court from another jurisdiction.  As Plaintiffs explained (at 4-5), the privilege traces its roots back to English common law, and the English formulation of the privilege plainly lacked any cross-jurisdictional limitation.  *E.g.*, 3 William Blackstone, *Commentaries on the Laws of England* 289 (1768) (privilege applies to anyone "attending any courts of record upon business").  Defendants do not cite *any* U.S. case adopting a requirement of cross-jurisdictional travel.  Indeed, the Supreme Court's statement in *Stewart* that the rationale for the privilege applies "especially" to those traveling from "neighboring states" plainly implies that the privilege is *not* limited to that context.  242 U.S. at 129; *see also, e.g.*, *Thompson's Case*, 122 Mass. 428, 429 (1877) (privilege applies to "[p]arties and witnesses . . . *whether they are residents of this state or come from abroad*" (emphasis added)); *Larned*, 12 F. at 592-93 (noting

7

that "any distinction between residents and non-residents is doubtful").  To be sure, there was particular incentive to use a party's or witness's court appearance as a trap when that person traveled from outside the jurisdiction, and so the privilege often arose in that context.  Thus, while many cases emphasize that the privilege applies in that context, it is not *limited to it*.[4]

Nor would it make sense to limit the privilege in the way Defendants suggest given its well-recognized purposes.  As Plaintiffs explained (at 6-7), the consistent justification for the privilege is that "[i]t takes away a strong inducement to disobey [court] process, and enables the citizen to prosecute his rights without molestation, and procure the attendance of such as are necessary for their defence and support."  *Halsey v. Stewart*, 4 N.J.L. 366, 369 (N.J. 1817).  This reasoning plainly applies to parties and witnesses who reside within the court's jurisdiction.

Defendants also note that no court has applied the privilege to immigration enforcement, but that is irrelevant.  The question is not whether the common law recognized a civil-*immigration*-arrest privilege, but in what ways the civil-arrest power was limited at common law, so as to inform the scope of Congress's invocation of that power in the INA.  The Supreme Court regularly holds that statutes lacking an exact common-law analog incorporate common-law limitations.  For instance, while there was no common-law tort for housing discrimination, the Fair Housing Act nevertheless incorporates tort principles like proximate cause and vicarious liability because it is "akin to a 'tort action.'"  *Bank of Am. v. City of Miami*, 137 S. Ct. 1296, 1305 (2017) (quoting *Meyer v. Holley*, 537 U.S. 280, 285 (2003)).

Civil immigration arrests are civil arrests, and are "akin" to the civil arrests consistently limited by the common-law privilege.  The cases discussing the privilege all explain that it

---

[4] The First Circuit's decision in *Northern Light Technology, Inc. v. N. Lights Club*, 236 F.3d 57, 62-63 (1st Cir. 2001), concerned whether a party could be served with process when traveling to the jurisdiction for the *same* case in which he was served.  Like the other cases on which Defendants rely, that decision recognized that the privilege applies to those traveling across jurisdictions, but does not hold that the privilege is *limited* to those people.

applies to civil arrests generally, and immigration arrests are indisputably civil in nature.  *See*

*Lopez-Mendoza*, 468 U.S. at 1038 ("A deportation proceeding is a purely civil action[.]").

Further, the justification for ICE arrests and common-law civil arrests is the same—ensuring that

the party shows up in court.  *See Demore v. Kim*, 538 U.S. 510, 528 (2003) (immigration arrest

and detention "necessarily serves the purpose of preventing deportable criminal aliens from

fleeing prior to or during their removal proceedings").  And the privilege's purposes apply as

much to civil immigration arrests as to other civil arrests, as immigration arrests have as much, if

not more, potential to interfere with courts' administration of justice.

Defendants note (at 13) that it is the government, rather than a private party, that asserts a

civil immigration infraction, but cannot explain why that matters.  Civil arrests are always

carried out by government officials to enforce civil law, and there is simply no reason Congress

would have expected that an alleged civil immigration infraction would be treated differently, for

purposes of the scope of the civil-arrest power, than any other alleged civil wrong.

Finally, contrary to Defendants' brief (at 13-14), the privilege was not "superseded by the

process-immunity privilege."  The privilege against service of process on those attending court in

an unrelated case is an *application*, not a replacement, of the civil-courthouse-arrest privilege.

*E.g.*, *Stewart*, 242 U.S. at 129.  Most U.S. cases discuss the civil-arrest privilege in the context of

the process-immunity privilege because civil arrests faded as a means of initiating suit.  The

civil-courthouse-arrest privilege may arise less frequently, but it has not *ceased to exist* such that

it does not inform the scope of a civil-arrest power granted by Congress.  Indeed, the privilege's

continued vitality was recently reaffirmed in Massachusetts.  Memo at 6; Zimmer Decl. Ex. 7.

**B.      The INA incorporates, not abrogates, the common-law privilege.**

**1.      The INA's text and structure are consistent with the privilege.**

When Congress invokes a common-law principle governed by common-law rules, it is

9

presumed that "Congress . . . is familiar with the common-law rule and does not mean to displace it *sub silentio*." *Lexmark Intern., Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 132 (2014); *see also* Memo at 10-13.  The INA's civil-arrest provisions simply invoke the common-law civil-arrest authority without any suggestion that Congress intended to displace common-law limitations on that authority.  *See* 8 U.S.C. §§ 1226(a), 1357(a)(2).

Defendants' reliance (at 17) on the "even broader arrest authority" authorized near the border under § 1357(a)(3) *undermines* their argument, as it makes clear that the general civil-arrest authority under sections 1226(a) and 1357(a)(2) is not as unlimited as they claim.  After all, if the general civil-arrest authority under sections 1226(a) and 1357(a)(2) were limited only by the Constitution—as Defendants seem to suggest—there would be no need for Congress to have authorized *broader* civil-arrest authority near the border.  The broader authorization in section 1357(a)(3) shows that the civil-arrest authority authorized by sections 1226(a) and 1357(a)(2) is limited by established constraints on the civil-arrest power—including the well-settled common-law limitation against civil arrests of those attending court on official business.

Defendants also get no help from section 1226(c), which states that when the Attorney General is required to "take [an alien] into custody," he or she should do so "when the alien is released" after a criminal sentence.  Congress's clarification that the Attorney General is not required to take a noncitizen into custody while that person is serving a criminal sentence says nothing about the scope of ICE's civil-arrest authority, and in no way suggests that Congress intended to abrogate, rather than incorporate, common-law limitations on the civil-arrest power.

## 2. The canon of constitutional avoidance further supports finding no abrogation.

To the extent there is any ambiguity as to whether the civil-arrest provisions incorporate the common-law privilege, the canon of constitutional avoidance resolves it.  Defendants ignore

many of Plaintiffs' constitutional arguments, and fail to adequately respond to the rest.

First, Defendants concede (at 19) that the Constitution guarantees the right "to bring to court a grievance," and they do not dispute that, due to Defendants' action, large segments of the Massachusetts population will no longer bring their grievances before Massachusetts courts. *See* Vega Decl. ¶¶ 6-16.  Indeed, this problem is so severe that the Chelsea Collaborative has been forced to develop a mediation program to attempt to resolve disputes that the parties will not bring in court.  The Directive thus raises serious constitutional concerns even if Defendants are correct (at 19) that the Constitution provides only a right to *initiate* a suit.  Further, the right is not so limited as Defendants claim.  While the government is not obligated to *provide all resources* needed for effective litigation, *Lewis v. Casey*, 518 U.S. 343, 354 (1996), the government cannot bar litigants' access to the court—by, for instance, making courts inaccessible to those with disabilities, *see Tennessee v. Lane*, 541 U.S. 509, 522-23 (2004).

Second, as Plaintiffs' memorandum explained (at 15-16), abrogating the privilege would lead to significant Sixth Amendment concerns.[5]  Defendants offer no response.

Third, as an intrusion into the "historic powers of the States," any abrogation of the common-law privilege must be "plain" and "unmistakably clear" pursuant to *Gregory v. Ashcroft*, 501 U.S. 452, 460-61 (1991).  *See* Memo at 16.  Abrogating a privilege the Massachusetts courts have recognized as "a prerogative exerted by the sovereign power through the courts for the furtherance of the ends of justice," *Valley Bank & Trust Co. v. Marrewa*, 237 N.E.2d 677, 679 (Mass. 1968), is unquestionably such an intrusion, as is the Directive's interference with the Commonwealth's police power.  *See* Memo at 16.  The INA lacks any plain and clear statement abrogating the privilege.  *Id.*  Defendants, again, offer no response.

---

[5] Plaintiffs' Sixth Amendment arguments are relevant for purposes of constitutional avoidance even though Plaintiffs are not asserting a Sixth Amendment violation.  *See Clark v. Martinez*, 543 U.S. 371, 380-82 (2005).

Finally, interpreting the INA to abrogate the privilege violates the Tenth Amendment anti-commandeering principle.  As Defendants note (at 18), and as Plaintiffs recognized (at 17), the Directive does not explicitly order Plaintiffs to tell ICE who will be appearing in court on their behalf, or to make those people available for ICE arrest.  Instead, however, it installs ICE officers in state courts to simply extract that information and arrest those people, in violation of state privilege law prohibiting such arrests.  Defendants cannot explain why the Tenth Amendment permits such an end-run around established anti-commandeering principles.

**III.**  **The equities strongly favor the limited preliminary injunctive relief Plaintiffs seek.**

Defendants do not dispute that Plaintiffs would suffer irreparable harm absent an injunction, *see* Opp. 19-20, and Defendants cite nothing for their assertion that the public's interest in "law enforcement and public safety" outweighs Plaintiffs' irreparable harm.  Indeed, an injunction is *necessary* for "law enforcement and public safety" given the extent to which ICE's Directive and civil courthouse arrests deter victims from reporting crimes and interfere with Plaintiff DAs' ability to prosecute crime.  By contrast, for more than half a century the federal government enforced the INA's civil-arrest provisions without any meaningful reliance on civil courthouse arrests.  Defendants note (at 3-4) that Massachusetts law bars its officials from detaining criminal defendants to transfer them to ICE custody, but that is irrelevant as Plaintiffs in this case are only challenging the courthouse arrest of those *not* in state custody, as the application of the privilege is different for those not appearing in court on their own.

Finally, Defendants complain about the scope of injunctive relief, but, as Plaintiffs' motion made clear, Plaintiffs are seeking a *statewide*, not nationwide, preliminary injunction.  That corresponds to the scope of Plaintiffs' injuries, as Plaintiff CPCS operates statewide.

## CONCLUSION

This Court should grant the motion for a preliminary injunction.

Dated: May 20, 2019

Respectfully submitted,

/s/ David J. Zimmer
David J. Zimmer (BBO# 692715)
    *Special Assistant Attorney General*
Daryl L. Wiesen (BBO# 634872)
Alicia Rubio-Spring (BBO# 692640)
Katherine M. Fahey (BBO# 699003)
Christopher J.C. Herbert (BBO# 703492)
Jordan Benson (BBO# 703215)
GOODWIN PROCTER LLP
100 Northern Avenue
Boston, MA 02210
(617) 570-1000
DZimmer@goodwinlaw.com
DWiesen@goodwinlaw.com
ARubio-Spring@goodwinlaw.com
KFahey@goodwinlaw.com
CHerbert@goodwinlaw.com
JBenson@goodwinlaw.com

*Attorneys for Plaintiffs Marian Ryan, in
her official capacity as Middlesex County
District Attorney, and Rachael Rollins, in
her official capacity as Suffolk County
District Attorney*

/s/ Wendy S. Wayne
Wendy S. Wayne (BBO# 555665)
Committee for Public Counsel Services
Immigration Impact Unit
21 McGrath Highway, Somerville, MA 02143
(617) 623-0591
wwayne@publiccounsel.net

*Attorney for Plaintiff the Committee for Public
Counsel Services*

/s/ Oren N. Nimni
Oren N. Nimni (BBO# 691821)
Lawyers for Civil Rights
61 Batterymarch St., 5th Floor
Boston, MA 02110
(617) 482-1145
onimni@lawyersforcivilrights.org

David J. Zimmer (BBO# 692715)
Daryl L. Wiesen (BBO# 634872)
Alicia Rubio-Spring (BBO# 692640)
Katherine M. Fahey (BBO# 699003)
Christopher J.C. Herbert (BBO# 703492)
Jordan Benson (BBO# 703215)
GOODWIN PROCTER LLP
100 Northern Avenue
Boston, MA 02210
(617) 570-1000
DZimmer@goodwinlaw.com
DWiesen@goodwinlaw.com
ARubio-Spring@goodwinlaw.com
KFahey@goodwinlaw.com
CHerbert@goodwinlaw.com
JBenson@goodwinlaw.com

*Attorneys for Plaintiff Chelsea Collaborative, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I, David J. Zimmer, hereby certify that a copy of the foregoing document, filed through the CM/ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies shall be served by first class mail postage prepaid on all counsel who are not served through the CM/ECF system on May 20, 2019.

*/s/ David J. Zimmer*

14