# Ex. D

ICE Policy 10036.1: Interim Guidance Relating to Officer Procedure Following Enactment of VAWA 2005 (Jan. 22, 2007)

U.S. Department of Homeland Security
425 I Street, NW
Washington, DC 20536



**U.S. Immigration and Customs Enforcement**

JAN 2 2 2007

| | |
|---|---|
| MEMORANDUM FOR: | Field Office Directors and Special Agents in Charge |
| FROM: | Director John P. Torres<br>Office of Detention and Removal Operations<br><br>Director Marcy M. Forman<br>Office of Investigations |
| SUBJECT: | <u>Interim Guidance Relating to Officer Procedure Following Enactment of VAWA 2005.</u> |

Purpose

The Violence Against Women and Department of Justice Reauthorization Act of 2005 (VAWA 2005), which became effective on January 5, 2006, expanded various protections for aliens seeking immigration benefits as crime victims and amended various sections of the Immigration and Nationality Act (INA). As a result, operational units of U.S. Immigration and Customs Enforcement (ICE) will be required to follow new procedures when taking certain actions in cases involving aliens eligible to apply for VAWA benefits or T or U nonimmigrant status. This interim guidance explains how VAWA 2005 affects the current operating procedures of the Office of Investigations (OI) and the Office of Detention and Removal Operations (DRO).

Background

Congress passed the Violence Against Women Act (VAWA) of 1994 as a response to growing concerns over gender-related violence. VAWA provides that abused spouses, children, and parents of U.S. citizens or lawful permanent residents can "self-petition" to obtain lawful permanent residence. These provisions allow certain battered aliens to file for an immigrant visa in order to seek safety and independence from the abuser without the abuser's permission.

Congress subsequently passed the Victims of Trafficking and Violence Protection Act of 2000, which reauthorized the VAWA provisions of 1994 and created two new nonimmigrant categories: T status and U status. T nonimmigrant status is available to victims of "severe forms of trafficking" who are physically present in the United States or a port of entry as a result of that trafficking. U nonimmigrant status is available to aliens who have "suffered substantial physical or mental abuse" as a result of certain criminal acts. Victims eligible for VAWA benefits or T or U nonimmigrant status may seek benefits through separate applications submitted to the Vermont Service Center of U.S. Citizenship and Immigration

www.ice.gov

Services (USCIS). This memorandum provides interim guidance concerning the expanded confidentiality protections of the VAWA 2005 and the legislation's requirement that ICE issue a certificate of compliance in certain circumstances.

Discussion

    A. <u>Definition of "VAWA Self-Petitioner"</u>

VAWA 2005 added INA § 101(a)(51), which defines "VAWA self-petitioner" as an alien, or a child of the alien, who qualifies for relief under several provisions of the Act and generally requires that the victim be abused, battered, or subjected to human trafficking or severe mental or physical abuse. A self-petition allows the victim the opportunity to adjust status without the abuser's assistance. ICE employees should become familiar with the categories of VAWA self-petitioners and the many ways in which battered victims may adjust their status. For purposes of this interim guidance, if an officer believes there is any credible evidence that the alien may be eligible for VAWA benefits or T or U nonimmigrant status, the requirements of 8 U.S.C. § 1367, described below, must be followed along with standard operating procedure.

    B. <u>Use of Information from Prohibited Sources and Confidentiality</u>

Section 1367(a) of Title 8 of the United States Code, as amended by VAWA 2005, prevents ICE employees from making an adverse determination of admissibility or deportability of an alien using information furnished *solely* by certain people associated with the battery or extreme cruelty, such as the abuser or a member of the abuser's family living in the same household as the victim. For purposes of this interim guidance, an adverse determination of admissibility or deportability would include placing an alien in removal proceedings or making civil arrests relating to an alien's violation of the immigration laws. Section 1367(a) also generally prohibits ICE employees from disclosing any information about a VAWA, T, or U beneficiary to anyone, especially those who might use the information to the alien's detriment, *i.e.*, an abuser who may wish to have the victim removed from the United States.

Information provided *solely* by prohibited sources must be independently corroborated. Examples of prohibited sources include: the abuser in the case of a VAWA petitioner, the human trafficker in the case of a T status applicant, or the perpetrator of substantial physical or mental abuse in the case of a U status applicant. In such cases, ICE employees cannot rely solely on these sources when making an adverse determination of admissibility or deportability. This prohibition is important to note because ICE officers sometimes receive information from upset or disgruntled spouses, abusers, traffickers, or family members. An arrest based on such information would not violate § 1367 if, according to existing standard operating procedures, the ICE officer independently verifies the information (*e.g.*, through an immigration database) prior to making the arrest. To avoid a possible violation of § 1367, ICE officers must verify the information provided from these prohibited sources. For example, if the abuser husband calls ICE and states that his alien wife is in the United States after being ordered removed, ICE must independently verify the prior removal and note such corroboration on Form I-213 (Record of Inadmissible/Deportable Alien).

SUBJECT: VAWA GUIDANCE
Page 3

Section 1367 does not prevent ICE officers from making arrests of aliens believed to be in the United States illegally if the information provided by a prohibited source is independently verified. Likewise, § 1367 does not prevent ICE officers from arresting aliens who have applied for benefits under VAWA or the T or U nonimmigrant categories. Instead, § 1367 prevents ICE officers from making adverse determinations of admissibility or deportability based on information provided "solely" by a prohibited source. Simply stated, ICE officers must independently verify information and check databases at their disposal to determine the existence of any pending victim-based applications for immigration benefits. ICE officers are also reminded to consider the sources of their information and be aware that there is a possibility that the caller may be involved in an abusive or violent relationship with the alien who is the subject of the call. Accordingly, if the source of the independently verifiable information is likely an abuser or someone acting in the abuser's capacity, the ICE officer should consider using prosecutorial discretion.

This interim guidance also reminds ICE employees that they are generally prohibited from "permit[ing] use by or disclosure to anyone (other than a sworn officer or employee of [DHS])" of any information which relates to an alien who is the beneficiary of an application for relief under victim based benefits (VAWA, T or U nonimmigrant status).[1] If ICE employees know that an alien has sought such victim-based benefits, they are generally prohibited from disclosing any information to a third party. In enacting this nondisclosure provision, Congress sought to prevent, with limited exceptions, disclosure of *any information* relating to beneficiaries of applications for VAWA benefits (battered spouses or children) or for T or U nonimmigrant status, including the fact that they have applied for benefits. The disclosure of certain information is permitted in limited circumstances. Those circumstances include disclosure for legitimate law enforcement purposes, statistical purposes, and benefit granting or public benefit purposes. *See* 8 U.S.C. § 1367(b) (listing exceptions to general nondisclosure rule). In short, ICE employees must not reveal any information concerning an alien's T, U, or VAWA application unless an exception to the general nondisclosure requirement applies. The nondisclosure limitation ends when the application for relief is denied and all opportunities for appeal of the denial have been exhausted.

C. Sensitive Location Certificate of Compliance Requirement

VAWA 2005 added new INA § 239(e), which requires the completion of a certificate of compliance in certain cases. INA § 239(e) states, in relevant part:

> (1) In general
> In cases where an enforcement action leading to a removal proceeding was taken against an alien at any of the locations specified in paragraph (2), the Notice to Appear shall include a statement that the provisions of section 384 of the IIRIRA of 1996 (8 U.S.C. § 1367) have been complied with.
>
> (2) Locations

---

[1] For additional information concerning the non-disclosure of information relating to VAWA beneficiaries, please see *Memorandum of Paul W. Virtue, INS Acting Executive Associate Commissioner, Non-Disclosure and Other Prohibitions Relating to Battered Aliens: IIRIRA § 384*, May 5, 1997.

> The locations specified in this paragraph are as follows:
> (A) At a domestic violence shelter, a rape crisis center, supervised visitation center, family justice center, a victim services, or victim services provider, or a community-based organization.[2]
> (B) At a courthouse (or in connection with that appearance of the alien at a courthouse) if the alien is appearing in connection with a protection order case, child custody case, or other civil or criminal case relating to domestic violence, sexual assault, trafficking, or stalking in which the alien has been battered or subject to extreme cruelty or if the alien is described in subparagraph (T) or (U) of section 101(a)(15) of this title [8 U.S.C. § 1101(a)(15)].

This provision applies to all apprehensions occurring on or after February 5, 2006.

Section 239(e) requires ICE to certify that the agency has independently verified the inadmissibility or deportability of an alien that was encountered at these specified sensitive locations. In practical terms, when ICE officers encounter aliens at these sensitive locations and ultimately issue a Notice To Appear, the officers must ensure that they have independently verified the inadmissibility or deportability of that alien and must not permit any unauthorized disclosure of information about the alien.

The file must bear information adequately alerting the officer or agent who is preparing the NTA that the INA 239(e) certification requirement could be implicated. Moreover, in complying with 8 U.S.C. § 1367, the file must bear sufficient information to permit the issuing officer or agent to make a reliable assessment that, in fact, the prohibited source and nondisclosure provisions of § 1367 have been complied with. Accordingly, ICE officers or agents must record on the Form I-213 whether the alien was encountered at a sensitive location, whether information related to the alien's admissibility or deportability was supplied by a prohibited source, whether and how such information was independently verified, and an acknowledgement that, if applicable, the nondisclosure requirements have been complied with.

The certificate of compliance requirements reflects congressional intent that ICE proceed cautiously when making an arrest or otherwise physically encountering an alien at one of the sensitive locations without objective evidence that the alien is in the United States in violation of the immigration laws and that victims of battery, abuse, trafficking, and extreme cruelty be protected. In this regard, ICE officers encountering such individuals are to verify information through use of all databases at their disposal, including CLAIMS. For INA § 239(e) purposes,

---

[2] A community based organization means an organization that:
>    (A) focuses primarily on domestic violence, dating violence, sexual assault, or stalking;
>    (B) has established a specialized culturally specific program that addresses domestic violence, dating violence, sexual assault, or stalking;
>    (C) has a primary focus on underserved populations (and includes representatives of these populations) and domestic violence, dating violence, sexual assault, or stalking; or
>    (D) obtains expertise, or shows demonstrated capacity to work effectively, on domestic violence, dating violence, sexual assault, and stalking through collaboration.

See 42 U.S.C. § 13925(a)(3) (2006).

ICE officers must then issue a certificate of compliance if the alien was encountered at a sensitive location and ICE issued a Notice To Appear. The certificate of compliance must be completed by an officer or agent authorized to issue Notices To Appear after reviewing the information contained on the I-213 and confirming the prohibited source information was independently verified. *See* 8 C.F.R. § 239.1 (2006). The certificate may simply state: "I certify that, to the best of my knowledge and belief, section 384 of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (8 U.S.C. § 1367) has been complied with." The certificate of compliance language may be typed or printed on the NTA. Failure to complete a certificate of compliance may subject the officer and ICE to civil penalties and disciplinary action for violating 8 U.S.C. § 1367.

ICE officers are discouraged from making arrests at these sensitive locations absent clear evidence that the alien is not entitled to victim-based benefits. Aliens encountered at rape crisis centers, domestic violence centers, or any of the sensitive locations noted in INA § 239(e) are likely to be genuine VAWA self-petitioners. While INA § 239(e) does not prohibit arrests of aliens at sensitive locations, it is clear that Congress intended that cases of aliens arrested at such locations be handled properly given that they may ultimately benefit from VAWA's provisions. ICE officers should consider prosecutorial discretion in cases of aliens encountered at sensitive locations unless exigent circumstances exist. Examples of exigent circumstances include criminal activity, fraud, terrorism, or where there are extraordinary reasons for arresting aliens at sensitive locations.

If an officer is unsure whether a particular personal encounter or apprehension requires a certification of compliance under INA § 239(e), the officer should consult the local Office of Chief Counsel (OCC). If time does not permit, the officer should consult his or her immediate supervisor for assistance.

Questions about the information provided in this memorandum may be directed to the local OCC or to the Enforcement Law Division (202-514-2895). Specific victim assistance questions may be directed to Susan Shriner, ICE Victim-Witness Coordinator, at 202-616-8737.